UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PATRICK HILL,

        Petitioner,

-v-

        20 CR 521-03 (CM)

UNITED STATES OF AMERICA,

        Respondent.
------------------------------------------------------------X

DECISION AND ORDER DENYING MOTION FILED PURSUANT TO 28 U.S.C. § 2255

McMahon, J.:

    Patrick Hill was recently sentenced to 27 months in prison for his role in a labor bribery scheme that ended with his former union's losing its independence and being placed under the watchful eye of its national office due to the corruption of its elected leadership. Hill was allowed to plead pursuant to what this court believes was a generous plea agreement; and the court, while not party to that agreement, elected to honor it. However, after carefully consideration, I sentenced Hill at the top of the stipulated guidelines range, reflecting both my assessment of the seriousness of Hill's criminal conduct (which breached his fiduciary duty to his fellow union members) and the fact that Hill was the second most culpable defendant in this case.

    As part of his plea agreement, Hill knowingly and voluntarily waived his right to take an appeal from a sentence within the stipulated Guidelines range or to mount a collateral attack on the legality of such a sentence. On at least two occasions, Hill acknowledged his waiver on the record in open court; in response to the court's questions, he indicated that the waiver was the product of his own free will.

Hill's assigned surrender date was April 3, 2023. However, he requested, and the court granted, three adjournments of that date, so that Hill's counsel could advocate for a different placement by the Bureau of Prisons. He was ultimately designated to the camp at Lewisbugh, PA, where – when the court refused to delay his surrender any longer – he reported on June 27, 2023.

Less than two weeks later Hill filed a motion, pursuant to 28 U.S.C. § 2255, seeking vacatur of his sentence on the ground that the lawyer who ably represented him in his criminal case, Alberto A. Ebanks, had provided him with ineffective assistance of counsel.

That motion is DENIED. Hill's new counsel have not identified *any* miscarriage of justice, let alone a *substantial* miscarriage of justice, that would warrant vacatur and a reduction in Hill's sentence.

The Government's arguments in opposition to the motion (Dkt. 512) are, in the opinion of the court, well-founded. I make the following additional observations:

There was nothing unreasonable – objectively or subjectively – about prior counsel's advocacy for Hill. Effective advocacy is not measured by the number of pages in a brief or the number of letters of support submitted on behalf of a criminal defendant. There are times when less is more, and this was one of them. Mr. Ebanks painted a positive a picture of his client without going overboard (which is never a good idea in my courtroom). His sentencing speech -- which has as much or more influence on this court's sentencing decisions as any amount of paper -- extolled Mr. Hill's volunteerism as a firefighter and as a member of the National Honor Network. He emphasized his client's years of service to the union. And he offered evidence in mitigation of Hill's criminal activity, in the form of videos, in the hope of explaining the inexplicable – how Hill went from being a loyal union member to a corrupt union official.[1] Mr. Ebanks also submitted

---

[1] The court's reference to a lack of mitigating behavior when pronouncing sentence (Tr. 20-21) is again taken out of context by moving counsel. It was made in the context of discussing the nature and circumstances of Hill's

2

a report from Dr. Drob, a clinical psychologist, again in the hope of explaining to the court why Hill would behave as he did. Reading the motion, one would know none of this.

The motion takes entirely out of context (and in a most offensive way) Mr. Ebanks' remark about being "supremely unqualified" to suggest a particular sentence to the court. (Tr. at 16). In fact, Mr. Ebanks was doing what many defense counsel do– acknowledging the difficult job of a sentencing judge. He was not proclaiming his inadequacy as an attorney. In fact, he went on to note that Probation had recommended a variance from the Guidelines and argued that the court should consider that recommendation. He pointed out that his client had "reinvented himself" since being arrested. And he said that Hill was "looking forward" to paying his debt to society.

The court publicly extolled Mr. Ebanks' performance because he did the best he could with what he had – a client who was one of the lead defendants in a corruption case, a man who sold out his union by accepting over 21 cash bribes from a non-union contractor, in violation not only of the law but in breach of his fiduciary duty to his fellow union members. In my estimation, a substantial punishment was necessary, not only to punish Hill, but to set an example for other union officials who might be tempted to do what he so cavalierly did. Especially for the principal defendants in this union corruption case, the nature and circumstances of the crime and the need to punish while sending a very public message of general deterrence (factors that are inherent in the crime and not the product of advocacy) significantly outweighed any other factors in my sentencing calculus, while the history and characteristics of the defendant counted for less. While

---

crime – not his personal characteristics or his remorse. Having viewed the videos and listened to Mr. Ebanks's argument, the court simply observed that there was no mitigating behavior on Hill's part in terms of the enthusiasm with which he participated in criminal conduct for two years (which was not the case with some of the other defendants in this case). There is no basis for counsel to argue that this remark had anything to do with the purported paucity of information about Hill's personal characteristics in the record.

3

Mr. Ebanks was no Clarence Darrow, Darrow could not have gotten Hill a lesser sentence than he received.

In particular, had Mr. Ebanks obtained 1,000 letters, or 10,000 letters, or 100,000 letters of support from people who extolled his wonderful qualities, Hill would not have gotten a more lenient sentence. I fully understood that there are people in this world who are fond of Patrick Hill, and who depend on him, and who did not want to see him go to jail. I also understood that he undoubtedly did good things for union members during his years of service. Mr. Ebanks emphasized both of these points in his sentencing speech. Having more people tell me these things would not have impacted the sentence that was imposed.

I also sentenced Hill to prison knowing full well that it would likely have an adverse economic effect on him and on his family (though I agree with the Government that the use of the word "destitute" is overkill on the part of moving counsel). Prison almost always does have significant adverse economic effects on defendants and their families – which is why people should think about the impact that their actions might have on their loved ones before they do things like illegally take money under the table (or in bathrooms). Hill got a sentence within the Guidelines range to which he stipulated. He was fully aware of what he was likely to face when he entered his plea. I can only assume that he and his wife factored the distinct possibility of a Guidelines prison sentence into their post-plea financial planning. Hill, not the sentencing court, is the source of any financial distress his family may suffer.

I find offensive the "blame the victim" aspect of Hill's motion. Hill argues that his prior counsel should have attacked the credibility of the union members who submitted victim impact statements – something that new counsel calls "correcting the record." To support this argument, new counsel hired (at someone's expense, whether that of Hill or someone else is not clear) a

private investigator[2] to dig up details about the personal and family lives of those who decried his conduct in letters to the court. He proffers this information to undermine straw man arguments and findings of fact that neither the letter writers nor this court ever made.

The suggestion that Mr. Ebanks rendered constitutionally deficient representation by failing to engage in this form of "research" is ludicrous. Blaming the victim is seldom if ever effective sentencing advocacy. The "corrected" information provided by moving counsel in the motion would have had no positive impact on the court's sentencing decision and might even have had a negative impact, because it suggests to me that Hill does not really accept responsibility for his criminal behavior. Contrary to new counsel's suggestion that Hill demonstrates acceptance of responsibility simply by not trying to walk back his plea, there is a significant difference between pleading guilty and actually accepting responsibility for one's actions. If there were not, a court would not be able to deny acceptance of responsibility points to a defendant who pleads guilty as part of its Guidelines calculation. But the court always retains the discretion to evaluate the entire record and make the final decision about acceptance of responsibility for itself. Had Mr. Ebanks adopted the strategy espoused by new counsel, I am sure the Government would have argued for, and I would have seriously considered, subtracting one or more acceptance of responsibility points from my calculation of Hill's sentencing guidelines, thereby exposing him to a higher guidelines sentence.

Finally, one of the grounds assigned as ineffective assistance on the part of prior counsel was Mr. Ebanks' request that his client be considered, at an appropriate time, for inclusion in the Bureau of Prisons' RDAP program, based on his track record of alcohol use. Hill believes that his

---

[2] I know nothing about the private investigator and could not care less about the Government's characterization of him.

designation to Lewisburg, rather than to one of his preferred imprisonment locations (Otisville, Fairton, or Fort Dix), is the product of that request.

I am at a complete loss to understand how prior counsel's advocacy for RDAP qualifies as ineffective-- or, for that matter, why current counsel's request that the recommendation be withdrawn qualifies as effective assistance. The court does not decide where a defendant serves his time, and Hill has no right to serve his sentence at the institution of his choosing. For that reason alone, a lawyer's request for a program for his client cannot possibly constitute ineffective assistance of counsel, even if the request influences BoP's decision about where to place the client. There is no question in my mind that Hill' used of alcohol is problematic – otherwise there would have been no condition of supervised release related to alcohol treatment and counseling-- so he probably would have benefitted from an RDAP placement.

More important, however, is the fact that successful participation in RDAP almost always *lessens* the amount of time a defendant spends in custody. That is why, in nearly every case I see, counsel ask (sometimes beg) for an RDAP recommendation for their clients-- even when the facts warranting it are marginal at best (and they were not in Hill's case). I am under no illusion about why they make the request-- because their clients will get out of jail sooner if they complete that program. In fact, in 25 years of doing this job, I have never before been asked to *withdraw* an RDAP recommendation, though I have on many occasions been asked to *add* one after sentence was pronounced.

However, having reviewed the transcript of Hill's sentencing, I admit that it was at best unclear whether the court was granting Mr. Ebanks' request (though I intended to do so); and when Hill's new counsel inexplicably asked that the recommendation be removed from his judgment (in

which it was included), I promptly complied with that request. Therefore, Ebanks' RDAP request became a nullity, and so could not possibly have constituted ineffective assistance of counsel.

Patrick Hill was sentenced to a top of the stipulated guidelines range, after considerable thought on the part of this court, because of the court's assessment of the nature and circumstances of his venal, non-fiduciary conduct. It is the court's belief that Hill should serve every bit of his sentence (minus, of course, any good time credits he earns), and it is my hope that he will learn from the experience. I am deeply sorry that his family will have to suffer for his behavior. But that's the way it is.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). Further, the Court finds, pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from an order denying Hill's motion would not be taken in good faith. *See Feliz v. United States*, No. 01-cv-5544, 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002).

This constitutes the decision and order of the court. It is a written decision.

New York, New York
July 19, 2023

Colleen McMahon
United States District Court Judge

BY ECF TO ALL COUNSEL